IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES *ex rel.* DARRYL FLEMING, | ) ) ) |
| Petitioner, | ) Civil Action No.: 12 C 5190 ) |
| v. | ) Suzanne B. Conlon, Judge ) |
| NEDRA CHANDLER, Warden, Dixon Correctional Center, | ) ) ) ) |
| Respondent. | ) |

## **MEMORANDUM OPINION AND ORDER**

In 2000, Darryl Fleming, a member of the New Breed street gang, was convicted by a jury of first-degree murder and sentenced to 45 years' imprisonment for fatally shooting Raymond Smith. Fleming's pretrial motions to quash his arrest for disorderly conduct and to suppress statements he made to police and to an assistant state's attorney following his arrest were denied. The trial court granted the state's motion *in limine* to exclude defense witness testimony that another person confessed to shooting Smith. Fleming's motion for a new trial was denied, and his direct appeal and state postconviction proceedings were unsuccessful. He now petitions *pro se* for a writ of *habeas corpus* under 28 U.S.C. § 2254.

## I. BACKGROUND

### A. Raymond Smith's Murder

The facts are taken from the Illinois appellate court's decision on direct appeal unless otherwise noted. Darryl Fleming and co-defendant Josh Cole were among the members of the New Breed street gang who ran a drug dealing operation at 4235 West Fillmore in Chicago,

Illinois. Fleming exchanged customer money for packs of cocaine. Raymond Smith worked as a lookout for the drug operation beginning in November 1996. Smith's role with the drug operation was short-lived, because he was not a good lookout. Several weeks before his murder, two female customers complained to Fleming and Michelle Sanders, another participant in the drug operation, that Smith beat them up and stole their money.

On December 4, 1996, the day of his murder, Smith showed up on the 4200 block of West Grenshaw and purchased cocaine. Fleming and Sanders were nearby on the 4200 block of West Fillmore when they learned of Smith's presence. Fleming alerted Cole, and together they approached Smith. A confrontation ensued. Fleming and Cole beat Smith. At one point during the confrontation, Cole handed a handgun to Fleming, who shot Smith as he tried to run away. Sanders identified Fleming as the shooter during the initial homicide investigation, but attempts to locate Fleming were unsuccessful. In October 1997, Detective Ralph Vucko put a "stop order" on Fleming's fingerprints so that he would be alerted if Fleming was taken into police custody.

## B. Fleming's Arrest and Criminal Trial

On the morning of March 16, 1998, the police tactical office for the 11th District received a call that people were yelling in the street and disrupting traffic. Officer Edward Daniels and his partner, Officer DaVonda Louie, responded to the call. They saw Fleming and a woman conversing near the location of the disturbance and arrested them. Fleming was not yelling at the time of the arrest, nor was a citizen complaint made against him. He was transported to the police station, charged with disorderly conduct, processed, and placed in lock-up. During processing, Fleming identified himself to Officer Daniels as Larry Jones. Officer Daniels was

not aware that "Larry Jones" was an alias or that there was a stop order on his fingerprints under the name of Darryl Fleming. He did not question Fleming about the Smith homicide.

Later that day, Detective Vucko was informed that a man named Larry Jones was in lock-up and that there was a "stop order" on his fingerprints under the name of Darryl Fleming. Detective Vucko brought Fleming to police headquarters and placed him under arrest for Smith's murder. Detective Thomas Flaherty and assistant state's attorney ("ASA") Joan Pernecke interviewed Fleming that evening regarding Smith's murder. Fleming denied involvement in Smith's homicide. The following day, Fleming admitted working security for the drug operation and physically beating Smith the night of the murder. Fleming claimed Cole shot Smith.

Prior to trial, Fleming moved to quash his disorderly conduct arrest for lack of probable cause and to suppress the statements he made to police and ASA Pernecke while he was in custody. Both motions were denied. The state moved *in limine* to bar the testimony of defense witness Darryl Brewer, who would have testified that the day after Smith's murder, a man named "Ray Dog" admitted to shooting Smith because of a disagreement over drugs. The court granted the motion and excluded Ray Dog's statement to Brewer on hearsay grounds, but noted the ruling may be reconsidered as trial unfolded. The court reaffirmed its *in limine* ruling after the state rested its case. Resp. Ex. N at I103-I106. On June 22, 2000, a jury found Fleming guilty of first degree murder. He was sentenced to 45 years' imprisonment. His motion for a new trial was denied. *Id.* at K11.

## C. The Direct Appeal

Fleming timely appealed his conviction and the denial of his motion for a new trial. He raised two issues: (1) whether his statements to police and ASA Pernecke should have been

suppressed as the fruit of an unlawful arrest; and (2) whether he was denied his constitutional right to present a defense because the trial court barred Brewer's testimony that Ray Dog confessed to shooting Smith. Resp. Ex. B at 3. The appellate court affirmed.

The appellate court agreed with Fleming that the police lacked probable cause for the disorderly conduct arrest. No evidence showed Fleming was threatening the public order or breaching the peace when he was arrested. However, the court upheld the admission of his statements to police and ASA Pernecke after concluding the statements were sufficiently attenuated from the taint of the illegal arrest. The "stop order" on Fleming's fingerprints and his knowledge that Sanders had identified him as the shooter were intervening circumstances that broke the causal connection between the illegal arrest and his post-arrest statements. The court also upheld the exclusion of Ray Dog's statement on hearsay grounds. The court recognized Fleming's constitutional right to present witnesses in his defense, provided that unsworn, out-of-court statements contained assurances of trustworthiness. Analyzing the factors from *Chambers v. Mississippi*, 410 U.S. 284, 300-01 (1973), the court determined Ray Dog's declaration was not reliable even though it was made against his penal interest, because it was not corroborated by other evidence and because Ray Dog was unavailable for cross-examination.

Fleming petitioned for leave to appeal to the Illinois Supreme Court. He raised the same issues he presented at the appellate level. Resp. Ex. D. The petition was summarily denied. Resp. Ex. E.

D.  **State Court Postconviction Proceedings**

On June 27, 2003, Fleming filed a *pro se* petition for postconviction relief in the Circuit Court of Cook County. Resp. Ex. F. He raised three claims: (1) he was denied his constitutional

4

right to counsel during police interrogation following the disorderly conduct arrest; (2) his detention in excess of 27 hours constituted an illegal seizure; and (3) trial and appellate counsel were ineffective for failing to argue the issues of his right to counsel and illegal seizure. *Id.* at 1-2. The court appointed counsel to represent him. Resp. Ex. K ¶ 4. In July 2003, while represented by appointed counsel, Fleming filed a supplemental *pro se* postconviction petition raising two additional claims: (1) trial and appellate counsel were ineffective for failing to argue that the state's attorney's testimony that Fleming wanted to plead guilty was false and prejudicial; and (2) trial and appellate counsel were ineffective for failing to argue the trial court erred by not giving a jury instruction on accountability. Resp. Ex. G at 1.

In 2008, afte several years of continuances, Fleming filed two *pro se* motions alleging ineffective assistance of appellate counsel. Resp. Ex. K ¶ 7. He asked for the claims to be incorporated into his pending postconviction petition. *Id.* ¶ 8. On November 13, 2008, the trial court granted Fleming leave to file the supplemental *pro se* postconviction petition and the *pro se* motions. *Id.* ¶¶ 9-10. The state moved to dismiss the petition. The court granted the motion, finding Fleming's claims were not cognizable or barred by waiver and *res judicata*. *Id.* ¶ 12.

Fleming appealed the dismissal to the Illinois appellate court. However, the sole issue he raised on appeal was whether appointed postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c). Resp. Ex. H at 2. Rule 651(c) requires appointed counsel to certify that he (1) consulted with petitioner to ascertain petitioner's contentions of deprivations of constitutional rights, (2) examined the record of the trial proceedings, and (3) amended the *pro se* petition as necessary to adequately present petitioner's contentions. Ill. Sup. Ct. R. 651(c). The

appellate court concluded counsel's Rule 651(c) certificate was not deficient and that Fleming failed to rebut the presumption that counsel fulfilled his duties under Rule 651(c). Resp. Ex. K ¶ 1. Fleming's *pro se* petition for leave to appeal to the Illinois Supreme Court was summarily denied. Resp. Exhs. L, M.

Fleming petitions for a writ of *habeas corpus* under 28 U.S.C. § 2254. He raises seven claims: (1) he was unlawfully arrested for disorderly conduct without probable cause and his statements to police and the state's attorney should have been suppressed as fruit of the illegal arrest; (2) he was denied the right to present a defense by the exclusion of testimony that another man confessed to the murder; (3) he was denied his right to counsel during the police interrogation; (4) his post-arrest detention in excess of 27 hours constituted an illegal seizure; (5) trial and appellate counsel were ineffective for failing to argue Fleming was denied his right to counsel and illegally seized; (6) trial and appellate counsel were ineffective for failing to argue that the state's attorney's testimony that Fleming wanted to plead guilty was false and highly prejudicial; and (7) trial and appellate counsel were ineffective for failing to argue the trial court erred by not giving a jury instruction on accountability. Pet'n. at 5-7.

## II. ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review. A federal court will not independently analyze a petitioner's claims. *Rever v. Acevedo*, 590 F.3d 533, 536 (7th Cir. 2010). Relief is granted only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d); *Woolley v. Rednour*, 702 F.3d 411, 420 (7th Cir. 2012). A decision is "contrary" to clearly established federal law if the result reached is opposite to a result reached by the Supreme Court on materially indistinguishable facts. *Crockett v. Hulick*, 542 F.3d 1183, 1188 (7th Cir. 2008). A state court "unreasonably applies" federal law if it identifies the proper legal principle from Supreme Court precedent but reaches a decision "so incorrect that it lies outside of the range of reasonable conclusions." *Id.* (internal quotations omitted). Factual determinations made by a state court are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### A. Procedural Default - Claims 3-7

Before a federal court may consider the merits of habeas claims, the petitioner must exhaust his remedies by allowing the state courts one full opportunity to resolve possible violations of federal rights. 28 U.S.C. § 2254(b)(1)(A); *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). If a claim was not presented at each level of review in the state courts, the petitioner must demonstrate prejudice and cause for the default, or that a fundamental miscarriage of justice will occur absent federal review. *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 1052 (2011). "Cause" requires an objective factor external to the defense that impeded petitioner's efforts to comply with the state's procedural rules. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). A fundamental miscarriage of justice occurs when the failure to review a defaulted claim will result in the conviction of someone who is actually innocent. *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009). A petitioner asserting actual innocence must present new, reliable evidence of his innocence and establish that no reasonable jury would have found him guilty beyond a reasonable doubt based on the new evidence. *Id.*

Claims 3 through 7 of Fleming's federal habeas petition have not proceeded through one full round of state court review. They are procedurally defaulted. Fleming raised claims 3, 4, and 5 in his *pro se* petition for postconviction relief and added claims 6 and 7 in his supplemental *pro se* postconviction petition. He never presented these claims to the state appellate or supreme courts. The only issue raised on appeal from the postconviction proceeding was the sufficiency of appointed counsel's Rule 651(c) certification. Fleming attributes the default to his postconviction appellate counsel. He contends counsel erroneously believed it was unnecessary to raise the issues on appeal because the case would be remanded. He asserts he could not raise these issues to the appellate court directly because of a court rule requiring criminal defendants to send court correspondence through counsel, but he contends he presented the defaulted claims to the Illinois Supreme Court. Alternatively, he argues a fundamental miscarriage of justice will occur absent federal review of his claims.

Fleming's proffered explanations do not constitute cause for the default. As a general rule, attorney error does not excuse a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 757 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A narrow exception exists for attorney error in initial-review collateral proceedings that results in the default of a petitioner's claims of ineffective assistance of trial counsel. *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). The *Martinez* exception does not apply to Fleming's claims. Claims 3 and 4 are outside the scope of *Martinez* because they allege violations of the constitutional right to counsel and freedom from illegal seizure, not ineffective assistance of trial counsel. *Martinez* does not apply to the remaining claims because the alleged attorney omissions resulting in the default occurred at the appellate level, not during the initial postconviction proceeding. *Weekly v. Hardy*, No. 11

8

C 9231, 2012 WL 3916269, at *5 (N.D. Ill. Sept. 6, 2012) (Der-Yeghiayan, J.) (*Martinez* does not apply to procedural defaults based on omissions during the appellate process for postconviction petitions).

Fleming's other arguments are undeveloped and merit only brief attention. Illinois Appellate Court Rule 31(c) does not constitute cause for the default. The rule merely instructs criminal defendants on the appropriate channel for court communications. It does not bar represented criminal defendants from submitting claims through counsel for consideration on appeal. Fleming's assertion that the defaulted claims were submitted to the Illinois Supreme Court is unavailing. The document he claims he attached to his petition for leave to appeal is undated and bears no stamp or certificate of service proving it was filed with the Illinois Supreme Court. Nor does the document appear in the copy of Fleming's petition for leave to appeal that is contained in the record. More importantly, Fleming cannot prevail because he failed to present the claims to the Illinois appellate court and has not shown prejudice or cause for the default. Finally, Fleming's one-sentence assertion that a fundamental miscarriage of justice will occur fails for lack of support. He provides no new, reliable evidence of his innocence. Nor does he show that a reasonable jury would not have found him guilty beyond a reasonable doubt.

**B.  Noncognizable Issues - Claim 1**

Fleming's Fourth Amendment claim that he was unlawfully arrested for disorderly conduct and that his statements to police and ASA Pernecke should be suppressed as the fruit of an illegal arrest is barred. A state prisoner is not entitled to federal habeas relief on a Fourth Amendment claim that he had the opportunity to fully and fairly litigate in state court. *Stone v. Powell*, 428 U.S. 465, 494 & n.37 (1976). A petitioner has an opportunity to fully and fairly

litigate his claim when (1) he clearly apprises the state court of his claim and the factual basis for the claim, (2) the state court carefully and thoroughly analyzes the facts, and (3) the state court applies the proper constitutional law to the facts. *Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005). A federal court will not review the quality of the state court hearing or the correctness of the state court's decision. *Cabrera v. Hinsley*, 324 F.3d 527, 531 (7th Cir. 2003).

Fleming repeatedly presented his Fourth Amendment claim in state court. He filed pretrial motions to quash his disorderly conduct arrest for lack of probable cause and to suppress statements he made to police and to the ASA while in custody. Resp. Ex. N at C16, C18-C21. Full hearings were held on the motions. Fleming offered witness testimony and made oral arguments. *Id.* at 2-52, B3-B23, C1-C21, E1-E122. He renewed his objections to the arrest and the admissibility of the post-arrest statements in his motion for a new trial. *Id.* at C97-C99, K1-K11. The factual and legal bases for his Fourth Amendment claim were fully briefed on direct appeal to the appellate court and in his petition for leave to appeal to the Illinois Supreme Court.

The trial and appellate courts carefully considered Fleming's Fourth Amendment claim on the merits. The trial court issued rulings on Fleming's pretrial motions only after considering the evidence and arguments presented at the hearings. The appellate court's opinion provides a detailed analysis of Fleming's claim. Resp. Ex. A at 2-6, 15-24. The appellate court disagreed that police had probable cause to arrest Fleming for disorderly conduct, but affirmed the trial court's ruling on the admissibility of Fleming's post-arrest statements. The court applied the relevant law in determining that Fleming's statements were sufficiently attenuated from the illegal arrest. The court specifically identified two intervening circumstances that broke the connection between the invalid arrest and the statements. Resp. Ex. A at 21-23.

A review of the proceedings at the trial and appellate court levels indicates Fleming received an opportunity to fully and fairly litigate his Fourth Amendment claim. *See Cabrera*, 324 F.3d at 532 (full and fair opportunity to litigate was satisfied where petitioner received a suppression hearing and the state appellate and supreme courts considered the issue). Fleming offers no evidence suggesting the state proceedings were a sham or that the state courts failed to analyze his claims in good faith, nor does the record support such an argument.

## C.     Merits Analysis - Claim 2

Fleming's second claim is that his constitutional right to present a defense was violated because the trial court excluded the testimony of defense witness Darryl Brewer. Brewer would have testified that the day after Smith was shot, a man known as "Ray Dog" confessed to shooting Smith following a disagreement over drugs. Resp. Ex. A at 6. Fleming presented this claim at each level of the state court, so federal review may proceed on the merits. To prevail, Fleming must show the state court's ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). He contends the decision to grant the state's motion *in limine* was contrary to, or an unreasonable application of, the Supreme Court's holdings in *Washington v. Texas*, 388 U.S. 14 (1967), and *Chambers v. Mississippi*, 410 U.S. 284 (1973).

In *Washington*, the Supreme Court held that a Texas statute precluding individuals charged in the same crime from serving as witnesses for each other violated defendant's Sixth Amendment right to compulsory process. 388 U.S. at 15. Defendant, who was charged with murder, sought to introduce the testimony of Charles Fuller that he, not defendant, fired the fatal shot. *Id.* at 16. Fuller was the only other person present at the time of the shooting. *Id.* The trial

court excluded Fuller's testimony because Fuller had been convicted of the same murder. *Id.* at 16-17. The Supreme Court reversed, holding the state arbitrarily denied defendant's constitutional right to present witnesses to establish his defense by barring relevant, material eyewitness testimony. *Id.* at 19, 23.

*Washington* does not establish a constitutional violation here. The Supreme Court reversed the trial court's exclusion of witness testimony on distinguishable facts. Unlike the declarant in *Washington*, Ray Dog was neither charged with Smith's murder nor the only witness to the crime. At the motion *in limine* hearing, Michelle Sanders described a man named Ray Dog who was affiliated with the New Breed street gang. Resp. Ex. N at H19-H22. She testified as a witness to Smith's murder and identified Fleming as the shooter. She never mentioned Ray Dog as present the night Smith was shot. *Id.* at H87-H89. Fleming identified Cole, not Ray Dog, as the shooter in his statements to police. *Id.* at I49-I50, I66-I67, I81-I84. Further, in *Washington*, there was no legitimate basis for preventing defendant, but not the prosecution, from introducing Fuller's testimony. 388 U.S. at 22-23. Here, the trial court excluded Ray Dog's statement because it was not reliable. Ensuring that only reliable evidence is presented at trial is undisputedly a legitimate interest. *United States v. Scheffer*, 523 U.S. 303, 309 (1998). *See also Chambers*, 410 U.S. at 295 (a defendant's right to confront and cross-examine are not absolute and may "bow to accommodate other legitimate interests in the criminal trial process").

In *Chambers*, the Supreme Court held that hearsay rules may not be mechanistically applied where constitutional rights affecting the ascertainment of guilt are implicated. 410 U.S. at 302. At trial, defendant sought to introduce the out-of-court statements of a man named Gable McDonald that he, not defendant, fatally shot a police officer. *Id.* at 289. He was precluded

12

from calling McDonald as a witness under Mississippi's "voucher" rule, which prevented a party from impeaching his own witness, and the testimony of the friends to whom McDonald confessed was excluded on hearsay grounds. *Id.* at 292-94. The Supreme Court reversed, holding the state court's application of the hearsay rule violated defendant's due process rights because the statements were made under circumstances suggesting reliability and were vital to Chambers' defense. *Id.* at 300-03. The Court identified four factors for assessing the reliability of hearsay statements: (1) whether the declaration was made spontaneously to a close acquaintance shortly after the crime occurred; (2) whether the declaration is corroborated by other evidence in the case; (3) whether the declaration is against the declarant's penal interest; and (4) whether the state has adequate opportunity to cross-examine the declarant. *Id.* at 300-01.

*Chambers* does not establish a constitutional violation. The state courts recognized the *Chambers* standard and applied the factors in assessing the reliability of Ray Dog's hearsay statement. The trial court found that Ray Dog's statement was self-incriminating, but it questioned whether Brewer and Ray Dog were close acquaintances and noted that cross-examination of Ray Dog was "almost an impossibility" because his true identity and location were unknown. Resp. Ex. N at H15-H16, H24. The court observed that the circumstances surrounding Brewer's testimony raised significant reliability concerns. Brewer first mentioned Ray Dog's confession to police after he was taken into custody for an unrelated crime. *Id.* at H26-H27. The trial court stated Brewer had motive to fabricate the statement in return for leniency in his pending criminal matter. *Id.* at I105. The appellate court held the trial court's exclusion of Brewer's testimony was not an abuse of discretion. It agreed that Ray Dog's statement was made against his penal interest, but this was the only factor indicating reliability.

13

The appellate court noted that Ray Dog was unavailable for cross-examination. It rejected Fleming's arguments that Ray Dog's statement was corroborated by Smith's alleged antagonistic behavior, testimony Ray Dog sold drugs on the block Smith frequented, and the absence of bruising on Smith's body. Resp. Ex. A at 26-29.

The state courts' application of *Chambers* to Fleming's case was not unreasonable. Reasonable judges could disagree whether the evidence corroborated Ray Dog's statement. Sanders testified Smith purchased drugs the night of his murder, and Brewer would have testified Smith was shot over a disagreement involving drugs. However, Sanders never mentioned that Ray Dog was present that night or involved in the murder. Reasonable jurists could find the absence of bruises on Smith's body consistent with Ray Dog's declaration, which did not mention a physical confrontation. A lack of bruising was not inconsistent with testimony that Fleming and Cole beat Smith before he was shot, however. The medical examiner testified that Smith's winter clothing could have protected him, or that bruises may not have had time to form before Smith died. Fleming disagrees with the outcome, but it is not so incorrect as to lie outside the range of reasonable conclusions. *Crockett*, 542 F.3d at 1188.

Finally, Fleming states that "the decision may have been based on an unreasonable determination of the facts." *See* Reply at 5. This speculative assertion merely recites the legal test Fleming must satisfy to prevail under § 2254(d)(2). He presents no evidence the state court's decision was based on an unreasonable factual determination. Nor does he identify the particular facts the state court relied on that he disputes or the factual determinations he considers unreasonable. Accordingly, his argument fails.

**D.     Certificate of Appealability**

The court declines to issue a certificate of appealability. Fleming has not made a substantial showing of the denial of a constitutional right, nor would reasonable jurists debate whether the petition should have been resolved in a different matter or whether the procedural rulings were correct. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

### III. CONCLUSION

For the foregoing reasons, Fleming's petition for a writ of *habeas corpus* is denied. No certificate of appealability is issued.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

February 14, 2013